## S. W. MOSELEY v. C. G. LEE.

1. In 1853 defendant settled on public land, and in 1855 he received for it a quit-claim deed from one W., in whom no title was shown. Defendant placed the deed on record in 1855, and remained in possession of the land until 1870, when he was sued for it by the plaintiff, who derived title under a patent issued in 1861, on a file and survey made in 1860. Defendant relied on the limitation of five years. *Held*, that no statute of limitation ran in defendant's favor until the State parted with her title by the patent; but after the issuance of the patent, limitation may have run in his favor, although his deed was a quit-claim from a party devoid of any title, and notwithstanding the deed was recorded while the land was still public domain.

2. Suits for title or possession of real estate are "civil suits" within the meaning of the 43d Section of Article 12 of the Constitution of 1869, which declares that "the statutes of limitation of civil suits were sus- "pended by the so-called act of secession of the 28th of January, 1861, "and shall be considered as suspended within this State until the accept- "ance of this Constitution by the United States Congress."

3. A defendant who put improvements on public land is not entitled to com- pensation for them from a plaintiff who subsequently acquired title from the State, and this, notwithstanding the defendant, soon after set- tling on the land, received a quit-claim deed for it from a party who had no title.

APPEAL from Lamar. Tried below before the Hon. R. H. Taylor.

The opinion states the case.

*W. B. Wright, W. H. Johnson,* and *Bennett & Ballinger,* for the appellant.

No brief for the appellee has reached the reporter.

OGDEN, J.   The primary defense set up to this action in the court below was the statute of limitation of five years.   The appellant claims title by virtue of a patent from the State, issued in 1861 upon a location and survey made in 1860.   There is no evidence in the record that the State had parted with its title until the location and patent under which appellant claims, notwithstanding the appellee went into possession of a portion of the land in 1853, and received a quit-claim deed from Williams in 1855.   The title being in the State, against which the statute of limitation, by an express exception, cannot run, until 1861, the origin of appellant's title, it is unnecessary to consider appellee's claim any farther back than that latter period, in order to a proper determination of his defense, under the statute of limitation.   Appellant's title or patent from the State is dated in 1861, and, as a legal sequence, no statute of limitation could commence to run against him until that period.   (Gillespie *v.* Jones, 26 Texas, 343.)

But appellee went into possession of the land claimed by him, in 1853, and received a deed from Williams in 1855, which was duly recorded, and he has remained in possession of the same until the bringing of this suit in 1870; and though the statutes of limitation could not run against the appellant previous to the grant from the State under which he claims, yet in 1861 the title passed from the State, and the statute then commenced running in favor of appellee, in possession under a recorded deed, and against appellant, and all others who might claim any portion of the land so possessed.   Nine years elapsed from the issuance of appellant's title to the bringing of this suit; abundant time to give appellee a perfect title under the five years' limitation, by virtue of his deed and con-

tinuous possession, provided the statutes of limitation continued to run in his favor during that time.

It is, however, claimed for appellant, that the breaking out of the war of rebellion suspended the running of the statute, and which suspension continued until the adoption of the present Constitution; and that, therefore, appellee acquired no rights under his possession and deed by virtue of any law of limitation. The solution of this proposition must depend upon a proper interpretation of Section 43, Article 12, General Provisions of our present Constitution, which declares that " the " statutes of limitation of civil suits were suspended by the " so-called act of secession of the 28th of January, 1861, and " shall be considered as suspended within this State, until the " acceptance of this Constitution by the United States Con- " gress."

Suits for title or possession of real estate are, beyond controversy, civil suits, and it was clearly the intention of the Convention which adopted the Constitution to include real as well as personal actions. If there were any doubt in regard to this construction of the 43d Section of the Constitution, that doubt would be removed by a consideration of the object and purpose of the Convention in adopting it, which unquestionably was to secure, unimpaired, the rights of those who, by reason of absence from the State or otherwise, had been deprived of the right of action in the courts; and by a reference to the statutes passed and enforced during the late war. The act passed 26th of February, 1863, most definitely points out the statutes which were suspended, and which the Constitution declares shall remain suspended. The 1st Section of that act provides that, " All statutes of limitation, on all civil " rights of action of every kind, whether real or personal, are " hereby suspended until one year after the close of the war," etc. This act certainly suspended the acts of limitation of three, five, and ten years, on suits for the recovery of land, and the Constitution declares that they shall remain suspended. That the Convention had the power or authority to declare

the suspension of the statutes of limitation we think there can be no doubt. (Bender *v.* Crawford, 33 Texas, 750.)

Admitting that the statute commenced to run, in favor of appellee, on the issuance of title to appellant's vendor, it ceased to run on the breaking out of the war, and was not put into operation again until the adoption of the present Constitution. And thus we find that the statute of limitation did not run in favor of appellee and against the appellant, in all to exceed one year, and not a sufficient time to give appellee any right whatever under his plea of limitation.

This view of the law of the case demonstrates a material error in the charge of the court, that if the jury believe from the evidence that the defendant has held peaceable possession of the one hundred and sixty acres for five years, they must find for the defendant, without the qualification that the statute could not run while the title was in the State, nor that it was suspended during the war. By the instructions given, the jury had a right to presume that if a naked trespasser took possession of a portion of the public domain, and held the same for five years, especially if supported by a quit-claim deed from a person having no right or title to the same, he would acquire an indefeasible title against the world. This certainly cannot be the law of this State, and we are inclined to think that the court did not intend to give instructions in such unqualified terms. But the instructions, as given, may be presumed to have influenced erroneously the verdict of the jury.

It may be true that after a long continued possession of a portion of the public domain, by a party claiming a grant from the State, such a grant may be presumed; but this is not a case which would authorize such a presumption. The appellee purchased of one Williams a quit-claim deed, but the very deed he received is sufficient to rebut any presumption of a purchase in good faith. Besides, he is chargeable with notice that no title had passed from the State at the date of his deed, and especially is he chargeable with notice of the utter want of title in himself, on the issuance of the patent under which

appellant claims. From these facts we are clearly of the opinion that appellee is not such a purchaser in good faith as would entitle him to compensation for improvements. For the errors herein indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.