**Thomas W. PORTER, Petitioner,**

**v.**

**Frank P. WILSON, Sr., et ux., Respondents.**

**No. A–9867.**

Supreme Court of Texas.

April 7, 1965.

Clayton, Martin & Harris, Amarillo, for petitioner.

Stone & Stone, John C. Chambers, Amarillo, for respondents.

SMITH, Justice.

The opinion heretofore delivered in this cause on December 2, 1964, is withdrawn and the following opinion is substituted therefor.

This trespass to try title suit was brought on April 17, 1962, by the Respondents, the Wilsons, against Thomas W. Porter and others to recover title and possession to 11.37 acres of land out of the west part of Section 11, Block 6, I & GN RR Company survey, situated in Randall County, Texas. However, the controversy presented in the Court of Civil Appeals and in this Court is solely between the Wilsons and Porter, and only involves the title to lots numbered twenty-one (21), and twenty-four (24) in Block Numbered Thirty-six (36) of the Palisades in Randall County, Texas. Both lots lie within the boundaries of the 11.37 acres described in the Wilsons' petition.

The Wilsons pleaded both the Five[1] and Ten[2] Year Statutes of Limitations, and issues as to both statutes were submitted to a jury for determination. The judgment of the trial court for the Wilsons, allowing a recovery of title to the entire 11.37 acres, including Lots 21 and 24, is based on affirmative answers in favor of the Wilsons on both Limitation issues. Prior to the submission of these issues pertaining to Lots 21 and 24, Porter filed and presented a Motion for Instructed Verdict which was overruled. Subsequently, Porter filed a motion for judgment non obstante veredicto, and a motion for a new trial. These motions were both overruled.

1. Art. 5509, Vernon's Ann.Civ.St.Tex. "Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after cause of action shall have accrued, and not afterward. This article shall not apply to one in possession of land, who deraigns title through a forged deed. And no one claiming under a forged deed, or deed executed under a forged power of attorney shall be allowed the benefits of this article."

2. Art. 5510, V.A.T.S. "Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. The peaceable and adverse possession contemplated in this article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually enclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument."

On appeal to the Court of Civil Appeals Porter, as Appellant, presented points asserting that the trial court erred in overruling the above-enumerated motions. Porter's principal contention throughout was that there was no evidence of probative force to support the findings of the jury that the Wilsons held title under and by virtue of either statute. The Court of Civil Appeals, 371 S.W.2d 611, affirmed the judgment of the trial court on the ground that the Wilsons had established title under the Five Year Statute of Limitations. Therefore, the court did not consider the points before it attacking the trial court judgment insofar as it was based upon the Ten Year Statute of Limitations.

Porter did not assign as error in his motion for rehearing the failure of the Court of Civil Appeals to pass upon these points, and his application for writ of error fails to present such points.

█ We have concluded to sustain Porter's contention that the Wilsons have failed to establish title under the Five Year Statute of Limitations, but the Wilsons contend that the judgment of the trial court must be affirmed because Porter did not assign as error the failure of the intermediate court to pass upon the points attacking the judgment of the trial court based upon the finding of the jury that the Wilsons had established title under the Ten Year Statute of Limitations. With this latter contention we do not agree. Since we have concluded to reverse the judgment of the Court of Civil Appeals, holding that the Wilsons have title under the Five Year Statute of Limitations, we will dispose of the law questions presented in the application for writ of error, and the pertinent law questions presented on appeal to the Court of Civil Appeals which were not considered by that court. See McKelvy v. Barber, opinion by this Court, delivered July 8, 1964, 381 S.W.2d 59.

For the reasons now to be stated, we reverse the judgments of both the trial court and the Court of Civil Appeals, and render judgment that the Wilsons take nothing by their suit so far as Lots 21 and 24 are concerned.

## FIVE YEAR STATUTE OF LIMITATIONS

The principal basis for the Wilsons' contention that the judgments of the courts below should be affirmed is the holding announced in Rosborough v. Cook, 108 Tex. 364, 194 S.W. 131 (1917), which is to the effect that in order to support a limitation title under the Five Year Statute of Limitations, it is not necessary that the deed, under which the claim is made, convey any title. The contention is that the grantor may be wholly barren of any vestige of title, and, therefore, the deed pass no semblance of title; yet, if it describes and purports to convey the land and is on its face a good deed, it meets the requirements of the statute, and the claimant under the deed would prevail, provided, of course, that all other requirements of the statute have been met.

The Wilsons also cite in support of their contention the case of Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360 (1923), wherein it was held, in part:

"The deed is sufficient to support adverse possession and to set in motion the five-year statute of limitation. Parker v. Newberry, 83 Tex. 428, 18 S. W. 815 * * *. The statute, in so far as a deed is concerned, demands only that the person having peaceable and adverse possession of real estate be 'claiming under a deed or deeds duly registered.' Rev.St. Art. 5674. Of course such deed must describe the land. We think the instrument * * falls within the class designated as deeds."

We cannot agree that the judgments reached in these cases are controlling. The

deed,[3] under which the Wilsons seek to perfect title under the Five Year Statute of Limitations, was executed by J. H. Bright and wife on May 28, 1956. This deed recites that the Brights "bargain, sell, release and forever quit claim unto the said Frank P. Wilson, Sr., and wife, Iris Kirk Wilson, their heirs and assigns, all our right, title and interest in and to that certain tract or parcel of land. * * *" The habendum clause reads as follows:

"TO HAVE AND TO HOLD the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging unto the said Frank P. Wilson and wife, Iris Kirk Wilson, their heirs and assigns forever, so that neither we, the said grantors, nor our heirs, nor any person or persons claiming under us shall, at any time hereafter, have, claim, or demand any right or title to the aforesaid premises or appurtenances, or any part thereof."

The controlling question in this case is whether the instrument here involved is sufficient to give notice of the nature and extent of the claim asserted thereunder so as to qualify under the five-year statute. This question does not depend upon whether the grantors actually owned an interest in the property described in the instrument or not, but we must ascertain from an examination of the instrument whether it purports to convey the land itself or merely some wholly undefined and uncertain interest therein and in effect is a mere release of an invalid or doubtful claim.

■■■■ It seems well settled that a deed purporting to convey an undivided interest

in land will not support a claim to the entire tract under the five-year statute but will only operate as a claim to the interest which the instrument on its face purports to convey. Martinez v. Bruni, Tex.Com. App. (1921), 235 S.W. 549, holdings approved by the Supreme Court, 2 Tex.Jur.2d 244, Adverse Possession, § 128. An instrument which purports to convey such right, title and interest as a grantor may have *and no more* will not qualify as a deed under the statute as it does not purport to convey the land itself nor does it specify any particular interest which is purportedly conveyed. Here the limitation claimants contend that the instrument under which they hold affords a basis for a limitation claim to all of Lots 21 and 24 under the five-year statute. The circumstance that the instrument employs the words, "all our right, title and interest" or the word "quitclaim" is not fatal to their contention as it must be determined from the instrument *as a whole* whether it purports to convey the land itself or merely such interest as the grantor may have therein.

For example, in Jackson v. Heath, Tex. Civ.App. (1959), 325 S.W.2d 453, no wr. hist., it was held that an instrument which quitclaimed all the *right, title and interest of the grantor did not qualify under the* five-year statute. The habendum clause contained in such instrument was as follows: "to have and to hold the above released rights, titles, interests, claims and demands, to the said [grantors] their assigns, forever." This decision is correct. From the face of the instrument it cannot be said that the grantors purported to convey the land or a specified interest therein. Instruments purporting to convey or

3. "* * * do—, by these presents BARGAIN, SELL, RELEASE, AND FOREVER QUIT CLAIM unto the said Frank P. Wilson and wife, Iris Kirk Wilson, their heirs and assigns, all our right, title and interest in and to that certain tract or parcel of land lying in the County of Randall, State of Texas, described as follows. to-wit:

"Lots Numbers Twenty-one (21) and Twenty-four (24) in Block Number Thirty-six (36) of The Palisades, a Subdivision of a part of Section No. 11, Block No. 6, I&GN RR Co. in Randall County, Texas, as shown by the map or plat thereof of record in the Deed Records of Randall County, Texas."

release one's right, title or interest are commonly used to convey undivided interests of an unknown extent or claims having a dubious basis. It would be anomalous to say that a deed to an undivided one-third interest would support a claim to no more than an undivided one-third interest while a release or quitclaim of an unspecified right, title or interest would give notice and hence support a claim to the entire tract of land. In cases wherein the courts have construed an instrument employing the words, "all my right, title and interest" as one purporting to convey the land itself, they have found some wording in the instrument which evidenced an intention to convey the land itself rather than the right, title and interest of the grantor.

In Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940 (1915), this Court construed an instrument which contained the following clauses:

> Granting Clause: " ' * * * have bargained, sold, released and forever quitclaimed, and by these presents do hereby bargain, sell, release and forever quitclaim, * * * all my right, title and interest in and to that certain tracts or parcels of land * * *.' "

> Habendum Clause: " 'To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging to the said A. A. Neff and his heirs and assigns forever, so that neither I, the said R. Potts, nor my heirs nor any person or persons claiming under me, shall at any time hereafter have, claim or demand any right or title to the aforesaid premises or appurtenances or any part thereof.' "

Intention Clause: This clause follows a description by block and number of a large number of lots including the lot in controversy and also several small tracts by metes and bounds. The clause reads as follows:

> " ' * * * and all other real estate that I now own and am possessed of in the town of Paducah, in Cottle county, Texas. All of the above town property is situated in the town of Paducah, in Cottle county, Texas, as shown by the original recorded plat of said town, of record in vol. 5, page 81, in the deed records of Cottle county, Texas; and it is my intention here now to convey to the said A. A. Neff all the real estate that I own in said town of Paducah in Cottle county, Texas, whether it is set out above or not.' "

The Court then said:

> "The character of an instrument, as constituting a deed to land or merely a quitclaim deed, is to be determined according to whether it assumes to convey the property described and upon its face has that effect, or merely professes to convey the grantor's title to the property. If, according to the face of the instrument, its operation is to convey the property itself, it is a deed. If, on the other hand, it purports to convey no more than the title of the grantor, it is only a quitclaim deed. Richardson v. Levi, 67 Tex. [359], 364, 3 S.W. 444; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757."

The Court then made special reference to the granting clause and the habendum clause of the conveyance involved, which clauses have been heretofore set out and said:

> "If the character of the instrument were dependent, alone, upon the construction of [the granting and habendum clauses] * * * there could be no doubt * * * of its being simply a quitclaim deed, * * *."

It should be noted that the granting clause contained the words, "all my right, title and interest," and that the words of the habendum—"to have and to hold the said premises," were not construed to make the instrument operate "to convey the

property described," but the instrument remained one "merely professing to convey the grantor's interest to the property." In other words, the word "premises" was construed as applying to the right, title and interest of the grantor rather than to the tracts of land described in the deed.

It was held, however, that when the instrument was construed as a whole and the "Intention Clause" given due weight and consideration, the instrument was properly construed as one purporting to convey the land rather than such interest the grantor might have therein. It was held that one holding under the instrument in question would be protected as an innocent purchaser for value. While the five-year statute of limitations was not involved in Cook v. Smith, supra, the proper construction of the instrument of conveyance was at issue, i. e., did the deed purport to convey the land itself or merely the grantor's interest therein, if any?

It should be pointed out that the Court *used the word "quitclaim deed" to describe an instrument which does no more than purport to convey the right, title and interest of a grantor.* The Court held that the instrument involved in Cook v. Smith purported to convey the land and was not a quitclaim, despite the use of the words, " 'release and forever quitclaim * * * all my right, title and interest in and to' " the land involved.

It was similarly held in Parker v. Newberry, 83 Tex. 428, 18 S.W. 815 (1892), that an instrument which used the word "quitclaim" in a clause releasing a 320-acre tract from the warranty clause did not render the instrument of conveyance ineligible under the five-year statute. The words "right, title and interest" did not appear in the deed involved in Parker v. Newberry.

Perhaps the case which lends most support to respondent's position is Benskin v. Barksdale, Tex.Com.App. (1923), 246 S.W. 360, heretofore mentioned. Benskin recognizes as does Rosborough v. Cook, supra, that for an instrument to qualify under the

five-year statute it must *purport to convey the land* and not merely the grantor's interest in the land. The granting clause in Benskin v. Barksdale used the words "bargain, sell, release and forever quitclaim * * * all of my right, title and interest in and to [the described property]."

The habendum clause read as follows:

" 'To have and to hold the said premises together with all and singular the rights, privileges and appurtenances thereto in any manner belonging, unto the said J. M. Benskin, his heirs and assigns, forever, so that neither I, the said J. J. Ellis nor my heirs, nor any person or persons claiming under me, shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof. But it is expressly agreed, understood and stipulated that a vendor's lien is retained on the aforesaid described premises until the aforementioned and described note and all interest thereon has been fully paid when this deed shall become absolute as a quitclaim deed.' "

The Commission held that the wording of the habendum clause converted the instrument into one which *purported* to convey the land itself and not merely the interest which the grantor actually had therein. It was said that:

"The granting clause in the above deed [which employs the words 'all my right, title and interest'] is indefinite and uncertain as to the extent of the estate granted in the lands described.

" * * * The habendum of the above deed is not so flexible, pliant, and adaptable in its revelation of the extent of estate, in the land, intended by the parties to be passed. By its terms Benskin, his heirs and assigns, are to have and to hold the premises, together with all and singular the rights, privileges, and appurtenances thereto in any manner belonging, forever.

"We do not think the language of the instrument shows an intent merely to quitclaim the leasehold interest of Ellis."

We have heretofore set out the clauses under consideration in Cook v. Smith, supra, wherein it was said that the habendum clause would not convert a "right, title and interest" instrument into one purporting to convey the land itself, although it was held that the "Intention Clause" would have that effect. In our opinion Cook v. Smith sets forth the better rule insofar as the construction and effect of the habendum clause is concerned. It seems that a grantor who deliberately chooses the words, "right, title and interest" would not intend to destroy the effect of such words by using an habendum clause using the common phrase, "To have and to hold the above described premises."

## TAX DEEDS

�justify Commonly the phrase "right, title and interest" is used in sheriffs' deeds, particularly those which take place as a result of a tax lien foreclosure. The sheriff obviously does not own the property. He is necessarily conveying another's interest therein, but if the taxing authorities have performed their respective duties as to the levy and assessment of taxes (and the law presumes that they have) the deed will operate to convey the interest of the true owner of the property, hence the sheriff's deed following a tax lien foreclosure will qualify as notice under the statute as it purports to convey the interest of the true owner of the property. In the ordinary "release of all my right, title and interest" instrument, the grantor does not purport to be the owner of the land or any particular interest therein. The Court in the early case of Wofford v. McKinna, 23 Tex. 36 (1859), had under consideration the question of whether a tax deed would afford the basis for establishing title under the five-year statute. The Court, in answering this question in the affirmative, said:

" * * * [T]he statute intends an instrument which is really and in fact a deed, possessing all the essential legal requisites to constitute it such in law: * * * 'an instrument, by its own terms, or with such aid as the law requires, assuming and purporting to operate as a conveyance: not that it shall proceed from a party having title, or must actually convey title to the land; *but it must have all the constituent parts, tested by itself, of a good and perfect deed.*'" (Emphasis added.)

In the case of Seemuller v. Thornton, 77 Tex. 156, 13 S.W. 846 (1890), involving a tax deed, after quoting the above from Wofford v. McKinna, the Court held that the instrument was in the form of a deed "professing" to convey the land in controversy. Where the instrument purports to convey the land itself, even though the instrument uses the quitclaim terms of "right, title and interest," the instrument qualifies to support a claim under the Five Year Statute of Limitations. See Niday v. Cochran (1906), 42 Tex.Civ.App. 292, 93 S.W. 1027, no writ history.

▪ We conclude that since the Bright-Wilson deed to Lots 21 and 24 *did not purport to convey the land,* Rosborough v. Cook, supra, but only conveyed the Brights' right, title and interest in said lots of land, the Wilsons could perfect no title to the two lots under the Five Year Statute of Limitations.

## TEN YEAR STATUTE OF LIMITATIONS

▪ There is no evidence of probative force in the record to support the finding of the jury that the Wilsons perfected title under the provisions of Article 5510, supra. The trial court erred in failing to grant Porter's motions for an instructed verdict and for judgment non obstante veredicto. Our disposition of the Wilsons' claim of title under the Five Year Statute of Limitations makes it clear that the Brights recognized the title to Lots 21 and 24 as having been excluded from their deed.

658

Clearly, the Brights entered into possession under a deed which expressly excepted Lots 21 and 24. Therefore, Bright's possession, if any, is referable to the deed, and it is presumed that possession conforms to the deed and is confined to the limits thereof. Southern Pine Lumber Company v. Hart, 161 Tex. 357, 340 S.W.2d 775 (1960).

In 1948 or 1949, the Brights entered into possession of the 11.37 acres; they lived in a house situated upon Lot 14 within the boundaries of the 11.37 acres. On May 28, 1956, Bright conveyed Lots 21 and 24 to the Wilsons. On April 17, 1962, this suit was filed. Thus, it is seen that if the Wilsons are to recover title under the Ten Year Statute of Limitations, Article 5510, supra, they must rely upon the adverse possession, if any, by Bright and themselves.

The Wilsons must prove that they have had actual possession of such lots, and that the possession is of "such a character as of itself will give notice of an exclusive adverse possession, and mature into title after the statutory period," in this case ten years. Southern Pine Lumber Company v. Hart, supra. See McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677 (1945). We have examined the statement of facts, including the testimony of the witnesses, and find no evidence to support the finding of the jury that the Wilsons have title under the Ten Year Statute of Limitations. The evidence shows that a fence was "around" the 11.37 acres, and that Lots 21 and 24 were within the fence. Some of the witnesses testified that the fence was around the land he (Bright) bought. One of the witnesses testified that he was under the impression that "Mr. Bright bought all the land lying within the fences." The record is not clear, but some part of the 11.37 acres was not within the fence. Mr. Bright "strengthened" the fences after moving into the house on Lot 14. As one witness said: "* * * that fence wasn't changed any at all, except maybe where it was nailed on to a tree or

something, and he [Bright] moved it straight, and put in some posts." One witness testified that "He [Bright] had some ponies in there, and he lived on it." Some of the witnesses testified that Bright made no distinction in the character of the use of the land within the enclosure. *Mr. Bright did not testify, and we find no evidence that Bright adversely claimed the Lots 21 and 24.* Therefore, it is conclusive that no adverse possession has been established that would constitute compliance with the provisions of Article 5510, the Ten Year Statute of Limitations. Wilson testified that he claimed the land he bought and went into possession immediately after June 1, 1956; that he lived on Lot 14. However, he admitted that he "offered to accept" Mrs. Porter's proposition to sell Lots 21 and 24. Wilson testified that Porter offered to "get title" from Mr. Simmons and convey the title to Wilson for $50.00. The Tax Assessor and Collector of Canyon Independent School District testified that Wilson paid taxes on Lots 21 and 24 beginning with the year 1956, but that his records showed the owner to be W. B. Simmons.

The judgments of the trial court and of the Court of Civil Appeals awarding title to the Wilsons to Lots 21 and 24 are both reversed, and judgment is here rendered that the Wilsons take nothing by their suit in so far as Lots 21 and 24 are concerned. In all other respects, the judgments of both courts are affirmed. Affirmed in part, and reversed and rendered in part. All costs are adjudged against the respondents, the Wilsons. Respondents' motion for rehearing is overruled.

CALVERT, C. J., and GRIFFIN and WALKER, JJ., dissenting.

CALVERT, Chief Justice (dissenting).

The only issue in this case is a narrow one which the majority opinion tends to obfuscate. So that the only issue before us may be clearly stated, it is well at the outset to disassociate it from irrelevant

and immaterial matters by stating what is *not*[1] in issue.

The proper designation of an instrument which, considering all of its parts, purports to convey only the grantor's "right, title and interest" in land is *not* in issue. Admittedly, it is a *quitclaim deed*. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915).

Whether a quitclaim deed purports to "convey the land" is *not* in issue. Admittedly, it does not. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915); Richardson v. Levi, 67 Tex. 359, 3 S.W. 444 (1887); Harrison & Co. v. Boring, 44 Tex. 255 (1875).

Whether use of the word "quitclaim" in the granting clause will convert an instrument otherwise purporting to convey the land into a quitclaim deed is *not* in issue. Admittedly, it will not. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915); Richardson v. Levi, 67 Tex. 359, 3 S.W. 444 (1887).

Whether use of the general habendum clause, "to have and to hold the *above described premises,* etc." will convert a quitclaim deed into a deed purporting to convey the land is *not* in issue. Admittedly, it will not. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915); Hunter v. Eastham, 95 Tex. 648, 69 S.W. 66 (1902); Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757 (1895).

Whether a deed purporting to convey an undivided interest in land can predicate a claim to the whole of the land under the five-year statute is *not* in issue. Admittedly, it cannot. Acklin v. Paschal, 48 Tex. 147, 175–177 (1877); Martinez v. Bruni, Tex.Com.App., 235 S.W. 549 (1921).

Whether the deed from the Brights to the Wilsons, under which claim is made in this case, "is sufficient to give notice of the nature and extent of the claim asserted thereunder" is *not* the issue in the case, as stated by the majority, if by the statement the majority means the *exact*

nature and extent of the claim asserted. Admittedly, the deed does not give notice of the *exact* nature and extent of the claim asserted.

If the foregoing matters are *not* in issue here, what is the issue? The true issue is this simple: Does a *quitclaim deed* qualify as a *deed* within the contemplation and meaning of Article 5509, Vernon's Texas Civil Statutes?

## STARE DECISIS

If the rule of stare decisis is to be given controlling weight in seeking an answer to the issue, the answer must be that a quitclaim deed *does* qualify. That answer is compelled by our decisions in Parker v. Newberry, 83 Tex. 428, 18 S.W. 815 (1892), and Benskin v. Barksdale, Tex.Com.App., 246 S.W. 360 (1923, holdings approved); and it is reinforced by our decisions in Moseley v. Lee, 37 Tex. 479 (1872–73), McDonough v. Jefferson County, 79 Tex. 535, 15 S.W. 490 (1891) and Carleton v. Lombardi, 81 Tex. 355, 16 S.W. 1081 (1891).

Parker v. Newberry involved a plea of limitation under the five-year statute and was decided in 1892. It was the first case in which this Court met squarely the issue of whether a voluntary quitclaim deed would qualify as a *deed* within the contemplation of the five-year statute. There had been prior cases in which the Court had said or indicated that such a deed would qualify. In Moseley v. Lee, 37 Tex. 479 (1872–73), the defendant in a trespass to try title case held under a quitclaim deed. The Court held that he could not assert rights as a purchaser in good faith, but that had the limitation statute not been suspended during the War between the States, "abundant time [elapsed] to give appellee *a perfect title under the five years' limitation, by virtue of his deed* and continuous possession." In McDonough v. Jefferson County, 79 Tex. 535, 15

---

1. Emphasis mine unless otherwise indicated.

S.W. 490 (1891), certain of the defendants in a trespass to try title suit who held under a quitclaim deed pleaded the five-year statute of limitation and made proof of possession and payment of taxes for five years. The trial court's judgment ran in their favor. The plaintiffs sought a reversal of the judgment on the ground that admission of the deed in evidence was error. In ruling on the question, the Court said: "That deed is in form *a quitclaim deed,* and it is contended that it is not for that reason a deed under which title can be acquired by limitation. We think that under the facts of this case the objection to its introduction in evidence was properly overruled." In making the ruling the Court must have regarded the quitclaim deed as qualifying as a deed under the statute, else it would not have held it admissible in evidence to establish the defendants' title. The same holding is implicit in Carleton v. Lombardi, 81 Tex. 355, 16 S.W. 1081 (1891), in which one holding under a quitclaim deed urged defenses of innocent purchaser and the five-years' statute of limitation. The Court dealt with the defenses separately. It held that the quitclaim character of the deed was not changed by the recitation of a valuable cash consideration and that, therefore, the defense of innocent purchaser must fail. The same holding would have been sufficient to defeat the limitation plea if the Court had believed that a quitclaim deed did not qualify under the statute. But the Court rested its conclusion that the limitation defense could not be sustained on the ground that the deed had not been registered as required by the five-year statute.

In Parker v. Newberry the instrument under which claim was made purported to convey several tracts of land, including a 320-acre tract, and contained the usual habendum clause. The warranty clause read as follows:

"And I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said D. L. Newberry—save and except as to the J. P. Smith 320 acre survey to which I only make a quitclaim deed, and for the consideration of $1 per acre—his heirs and assigns against any person whomsoever lawfully claiming or to claim the same or any part thereof."

Parker, the appellant, asserted in this Court that the parenthetical statement in the warranty clause converted the instrument into a mere quitclaim deed to the 320 acre tract, and that a quitclaim deed would not support Newberry's claim under the five-year statute. Newberry, the appellee, argued that the statement only modified the warranty, and that it was unnecessary to decide whether a quitclaim deed would support his limitation claim. The Court did not resolve the controversy over whether the parenthetical statement modified the entire instrument as to the 320-acre tract, converting it into a quitclaim deed, or modified only the warranty. Instead, the Court dealt with the problem in the following manner:

"The first question raised has reference to the sufficiency of the conveyance under which Newberry claims to support his plea of limitation, and the sufficiency also of his possession. There are other questions raised which will be considered in the order presented. Recurring to the first mentioned, we think that the rule that a purchaser, who takes only such interest as is conveyed by a quitclaim deed technically, cannot, under that character of conveyance, be protected as a purchaser in good faith, etc., has no application where such deed is made the basis of the five-years plea of limitation. * * * *The character of the instrument would be unimportant if it be valid, and not void, as a conveyance, and belongs to that class of written instruments. The esssential requisites*

*of a deed necessary as the founda-tion of the plea are that it shall by its own terms, or with such aids as the law authorizes, assume or purport to operate as a conveyance.* Wofford v. McKinna, 23 Tex. 46."

The necessary effect of the Court's opinion was to *assume* that the instrument was a quitclaim deed to the 320 acres, and, on that basis, to hold that it was sufficient to support the plea. Otherwise, there was no reason for the Court to be concerned with the sufficiency of a quitclaim deed to support the plea; the question could have been disposed of by a simple holding that the parenthetical statement did not convert the instrument into a quitclaim deed as to the 320-acre tract, but only modified the warranty.

The majority opinion brushes aside Parker v. Newberry with the statement that the words "right, title and interest" did not appear in the deed, and the further statement that all the Court held was that use of "the word 'quitclaim' in a clause releasing a 320-acre tract from the warranty clause did not render the instrument of conveyance ineligible under the five-year statute." I suggest that this short-handed disposition of Parker v. Newberry does not do justice to the record or to the carefully worded opinion in the case. It is true that the words "right, title and interest" do not appear in the deed, but the parenthetical statement is that the grantor "only make[s] a quitclaim deed" to the 320-acre tract. Considering that a quitclaim deed is a "right, title and interest" deed, as the majority opinion recognizes, the statement is subject to no interpretation other than that as to the 320-acre tract the grantor "only make[s] a right, title and interest deed." Moreover, the Court did *not* make the holding attributed by the majority. The attributed holding assumes, or *now* decides, that the parenthetical statement modified *only the warranty* as to the 320-acre tract rather than the deed as a whole, a question directly

posed but neither decided nor assumed by the Court in 1892.

It would seem that the carefully worded opinion in Parker v. Newberry should have settled the question of whether a quitclaim deed qualifies as a deed under the five-year statute. It differentiated between the sufficiency of a quitclaim deed as a muniment of title and as a deed for five-year limitation purposes. It declared that for five-year limitation purposes the *character of an instrument* is unimportant if it is valid as a conveyance and belongs to the conveyance class of instruments. A quitclaim deed belongs to the conveyance class of instruments and, when valid, is a conveyance of such title as the grantor has. The Court knew this when it wrote. Richardson v. Levi, 67 Tex. 359, 3 S.W. 444 (1887). The Court further declared that the essential requisites to qualify a deed under the statute are "that it shall by its own terms, or with such aids as the law authorizes, *assume or purport* to operate as a conveyance." A quitclaim deed has those essential requisites, and the Court knew it. The Court knew, also, that a quitclaim deed purports to convey only the grantor's right, title and interest in land and does not purport to convey the land. So knowing, the Court carefully refrained from declaring that an essential requisite to qualify a deed under the statute was that it purport to convey the land.

But Parker v. Newberry did not put the issue at rest. It was raised again in this Court in Benskin v. Barksdale, Tex.Com. App., 246 S.W. 360 (1923). The history of that case is enlightening and should be an important consideration in our decision of this case.

Miss Barksdale, owner of record title to certain land, sued Benskin in trespass to try title. Benskin was in possession under a deed from Ellis. The instrument was plainly a quitclaim deed on its face. It purported to convey nothing more than Ellis' "right, title and interest" in and to the land, and provided that when a note

executed by Benskin as part consideration and secured by a vendor's lien was paid, "this deed shall become absolute *as a quitclaim deed.*" When the deed was executed, Ellis did not own the record title but held a leasehold interest in the land. Benskin pleaded the five-year statute of limitations as a defense to the suit. Judgment in the trial court was for Benskin on an instructed verdict. The Court of Civil Appeals held the instrument to be only a quitclaim deed, and reversed the trial court's judgment and rendered judgment for Miss Barksdale. 194 S.W. 402. That court recognized that this Court had held in Parker v. Newberry, supra, McDonough v. Jefferson County, supra, and Wofford v. McKinna, 23 Tex. 36 (1859), that "a quitclaim deed will support a claim of five-year limitation," but concluded on authority of the undivided interest cases that one will support such a claim only to the extent of the interest actually owned by the grantor. This Court granted Benskin's petition for writ of error which asserted that "the decision of the Court of Civil Appeals on this phase of the case is in direct, express, irreconcilable conflict with the decision of this Court in Parker v. Newberry, 83 Tex. 428, and McDonough v. Jefferson County, 79 Tex. 535." Citing those very cases and Safford v. Stubbs, 117 Ill. 389, 7 N.E. 653, as authority, this Court held:

> "The deed is sufficient to support adverse possession and to set in motion the five-year statute of limitation. * * * The statute, in so far as a deed is concerned, demands only that the person having peaceable and adverse possession of real estate be 'claiming under a deed or deeds duly registered.' * * * We think the instrument set out above falls within the class designated as deeds."

Considering the form of the instrument, the holdings of the Court of Civil Appeals, and the foregoing holding of the Commission of Appeals which it support-

ed by citing Parker v. Newberry and McDonough v. Jefferson County, it would seem plain enough that when this Court approved the Commission's holding we held that a quitclaim deed qualifies as a deed under the five-year statute. But the majority does not recognize that as a fact. The majority opinion states:

> "Benskin recognizes * * * that for an instrument to qualify under the five-year statute it must *purport to convey the land* [2] and not merely the grantor's interest in the land. * * *
>
> "* * *
>
> "The Commission held that the wording of the habendum clause converted the instrument into one which *purported* [2] to convey the land itself and not merely the interest which the grantor had therein."

I have searched the Benskin opinion in vain for the recognition and holding of which the majority speaks. They simply are not to be found in the opinion. Inasmuch as the instrument did *not* purport to convey the land but only the grantor's right, title and interest in the land and was expressly characterized by the grantor as a quitclaim deed, and inasmuch as the instrument was expressly held by the Court of Civil Appeals to be only a quitclaim deed, it seems unreasonable to conclude that this Court would hold that it purported *to convey the land itself* in the absence of a statement in the opinion to that effect. The holding which the majority says was made appears to be drawn as a mere inference from the Court's discussion of the granting and habendum clauses of the instrument, which discussion, according to the majority, indicates that the Court, contrary to the rule laid down in our prior holding in Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915), treated the habendum clause as converting the instrument into a deed purporting to convey the land. The

2. Emphasis that of the majority.

record discloses that there is no sound basis for the inference.

The Court was well aware of the holding in Cook v. Smith when it wrote the opinion in Benskin. In holding the deed from Ellis to Benskin to be only a quitclaim deed, the Court of Civil Appeals not only cited Cook v. Smith, but quoted the very language now quoted in the majority opinion for that court's holding that the granting and habendum clauses of the Benskin deed did not change its character from that of a quitclaim deed. It is unreasonable to infer that being thus reminded of the holding in Cook v. Smith by the opinion of the Court of Civil Appeals, the Court would either overlook that holding or would make a directly opposite and conflicting holding without mentioning it. It obviously did neither. It must be admitted that the true meaning of the Court's discussion of the granting and habendum clauses of the Ellis-Benskin deed is at first reading less than clear. It can be made clear by relating it to the question with which the Court was dealing in the light of arguments in the briefs of the parties. As stated by the Court in the Benskin opinion, counsel for Miss Barksdale argued that the instrument was only a quitclaim deed and purported to quitclaim *only* the grantor's right, title and interest in *a leasehold estate*. Counsel for Benskin argued in his brief that the deed purported to convey not only Benskin's interest in the leasehold estate but also any and all other right, title and interest which Benskin might own in the land. With issue thus joined, the Court sought its solution in the intention of the parties. The Court's discussion of the granting and habendum clauses is, therefore, not at all related to their legal effect on the character of the instrument as a quitclaim deed or a deed conveying land, as in Cook v. Smith, but is related altogether to their legal effect in disclosing the *intention of the parties* to quitclaim *all* right, title and interest or a *limited* right, title and interest. The Court said that if *intention of the*

*parties* was to be gathered from the granting clause alone it "might vary from nothing to the full fee" and, inferentially, thus be limited to an intent to convey only a leasehold estate, but that the habendum clause was not so adaptable and pliable and indicated an intent to convey *all* right, title and interest *in the premises* which the grantor might own. That this is a correct interpretation of the Court's discussion is made doubly clear by its conclusion immediately following the discussion: "We do not think the language of the instrument *shows an intent merely to quitclaim the leasehold interest* of Ellis." Having thus concluded that the instrument evidenced on its face an intent to convey *all* right, title and interest in the premises owned by Ellis, the Court held, in summary fashion as heretofore indicated, that the deed would support the claim under the five-year statute.

It should be apparent from the foregoing analysis of Parker v. Newberry and Benskin v. Barksdale that this Court has on two prior occasions directly decided the question in this case. In both, our decision has been that a quitclaim deed *does* qualify as a deed within the contemplation of Art. 5509. The majority does not meet the issue of stare decisis. Instead, the majority says, in effect, that had the Court as now constituted decided Parker v. Newberry, it would have held that the parenthetical statement in the warranty clause of the deed there considered did not modify the entire instrument as to the 320-acre tract but only released the tract from the warranty; and that had the Court as now constituted decided Benskin v. Barksdale, it would not have considered whether the parties to the deed intended that it convey *only* an interest in *a leasehold estate* or intended that it convey *all* of his right, title and interest *in the premises*, but would have held that the instrument purported to convey all of the grantor's right, title and interest in the premises and that it was, therefore, a quitclaim deed. What the

majority would then have held is not indicated except by inference from the holding in the case now before us.

I am not a slave to the rule of stare decisis. When passage of time indicates that court-made law results in grave injustice rather than in justice, I am willing to overrule prior decisions. See Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952). No such claim or showing is made here.

The majority's conclusion is reached largely on reasoning that inasmuch as a deed to an undivided interest will not support an adverse claim under the five-year statute to the whole of a tract of land, a deed to an indefinite and unspecified interest should not be held to support a claim under the statute to all or any part of a tract, although the whole of the tract is held adversely and is openly cultivated, used and enjoyed for the requisite period, and taxes are regularly paid thereon. That is precisely the argument which was made by counsel for Miss Barksdale in Benskin v. Barksdale, except that Parker v. Newberry and McDonough v. Jefferson County were recognized and affirmed by him as sound decisions to the extent of the interest actually owned by the grantor. The following is an excerpt from his written argument before this Court:

> "It is clearly the settled holding of our Court that a deed for an undivided interest in land will not under the five year's statute protect the grantee beyond the interest it purports on its face to convey. Martinez vs Bruni, 235 S.W. 551; Clifton vs Creason, 145 S.W. 323; Willis vs Burke, [7 Tex. Civ.App. 239] 27 S.W. 218; Acklin vs Paschall, 48 Tex. 175; Kelly vs Medlin, 26 Tex. 56.
>
> "This line of authorities is clearly conclusive of the case at bar."

The opinion of the Court of Civil Appeals reflects that it agreed with the argument. This Court did not.

Another reason for the majority's conclusion appears to be that a quitclaim deed does not "give notice of the nature and extent of the claim asserted thereunder." That reason was also urged on this Court in Benskin as a basis for rejecting the five-year limitation defense. The following is an excerpt from the written argument of counsel for Miss Barksdale:

> "It ought to be held and definitely settled that where the instrument of conveyance is only a pure quit claim, as that term is technically employed, and is not on its face a quit claim to the land itself but only purports to quit claim such interest as the grantor then had and no more, it is not sufficient to warrant prescription under the 5 year's statute, for the fundamental reason that it does not give notice that the land itself, that is the true owner's title to the land, is sought to be passed or described."

The argument, rejected then, is accepted now. Thus the ultimate effect of our treatment of Benskin v. Barksdale is only that we think the Court should have decided the case differently. This is the usual and customary situation in which the rule of stare decisis applies. But instead of honoring the rule of stare decisis and being guided by our own prior decisions, the majority rejects those decisions through misinterpretation and approves as correctly deciding the question the no-writ-history case of Jackson v. Heath, Tex.Civ.App., 325 S.W.2d 453 (1959).

## TAX DEEDS

A tax deed is a "right, title and interest" deed, pure and simple. It does not purport to convey land. It is a quitclaim deed, nothing more. Like voluntary quitclaim deeds, see Threadgill v. Bickerstaff, 87 Tex. 520, 29 S.W. 757 (1895), a tax deed will not support a defense of innocent purchaser. See Sanchez v. Hillyer-Deutsch-Jarratt Co., Tex.Civ.App., 27 S.W.2d 634 (1930), writ refused. Compare: Woodward v. Ortiz,

150 Tex. 75, 237 S.W.2d 286 (1951). In this area of the law the two types of instruments are the same character of conveyances and have the same operative legal effect—they are quitclaim deeds. This stands unchallenged by the majority. Under the holdings in Parker v. Newberry and Benskin v. Barksdale, the two types of instruments are also the same character of conveyances and have the same operative legal effect for five-year limitation purposes; they are still quitclaim deeds, but both qualify as "deeds" within the contemplation of Art. 5509. Their character thus remains consistent. Not so under the holding of the majority in this case. The majority concedes that a tax deed qualifies as a "deed" under Art. 5509. The concession must be made or a long line of decisions, beginning with Wofford v. McKinna, 23 Tex. 36 (1859), must be overruled. In order to honor that long line of decisions and yet hold that a voluntary quitclaim deed will not qualify under the statute, the majority declares that *for limitation purposes* a tax deed is *not* a quitclaim deed. Cited as authority for thus turning a tax deed into a Jekyll-Hyde instrument is Wofford v. McKinna, supra, and Seemuller v. Thornton, 77 Tex. 156, 13 S.W. 846 (1890).

Wofford v. McKinna does not support the conclusion. The Court did not hold that a tax deed qualified under the statute because the officer purported to convey the title of the true owner. But the Court did announce a rule for determining whether a deed would qualify. The Court said that for an instrument to qualify under the five-year statute, it must be

> " 'an instrument, by its own terms, or with such aid as the law requires, assuming or *purporting to operate as a conveyance*: not that it shall proceed from a party having title, or must actually convey title to the land; *but it must have all the constituent parts, tested by itself, of a good and perfect deed.' "

The holding in the case was that the description of the land was so indefinite as to render the deed void as a conveyance. The deed fulfilled the requirement that it purport to operate as a conveyance, but it did not fulfill the requirement that it have all the constituent parts of a good deed. This Court had an early opportunity in Parker v. Newberry, heretofore discussed, to distinguish Wofford v. McKinna on the very ground here attempted by the majority. The Court could have said that the rule of Wofford did not apply because the deed there was a tax deed and the deed in Parker was a voluntary quitclaim deed. Instead of doing so, the rule announced in Wofford v. McKinna was adopted and applied to a voluntary quitclaim deed.

Neither is anything said in Seemuller v. Thornton which indicates that the Court was distinguishing between tax deeds and voluntary quitclaim deeds. The Court did state in that case, as the majority points out, that the tax deed at issue "was in form a deed professing to convey the land," but the record in the case reveals that its character as a conveyance was not under attack and that it was in fact a "right, title and interest" deed. Parker v. Newberry was decided just two years after Seemuller v. Thornton by a Court composed of the same three Justices. Wofford v. McKinna was the only authority cited in support of the conclusion reached in both cases. It taxes credulity to suggest that the three Justices—Stayton, Gaines and Henry—would so soon have forgotten that the Court had made a distinction between the two types of deeds in Seemuller v. Thornton. It thus appears that what the Court joined together in 1892, it has now put asunder after seventy-three years of marriage; and contrary to the settled rule, the divorce has been granted on grounds which existed, unhidden, when the marriage ceremony was performed.

## ON THE MERITS

I recognize that there are conflicting decisions of the Courts of Civil Appeals on the question in issue, and that arguments of some cogency can be made on both

sides of the question. See 9 Baylor Law Review 338. All prior decisions of this Court which have dealt with the question, either directly or indirectly, point to a conclusion that a quitclaim deed does qualify as a deed under Art. 5509.[3] All of the arguments now advanced by the majority for holding that one does not qualify were advanced and rejected in Benskin v. Barksdale. They were rejected there because the Court regarded the question as foreclosed by Parker v. Newberry and McDonough v. Jefferson County. There is also sound reason for rejecting them now.

Art. 5509 does not declare what conveyances are referred to therein as "deeds." In 1859 this Court said in Wofford v. McKinna that in enacting the statute the Legislature intended by the use of the word "deed" to refer to any valid instrument which purported to operate as a conveyance and had all of the constituent parts of a good deed. That interpretation was reaffirmed by this Court in 1892 in Parker v. Newberry. The meaning of the word "deed" cannot have changed in the meantime. A voluntary quitclaim deed, otherwise valid, meets the test laid down. It purports to operate as a conveyance. It has all the constituent parts of a good deed—it is in writing, has a grantor and grantee, describes the premises, contains words of conveyance, and is signed by the grantor. Meeting those requirements, an instrument is made valid as a conveyance by Art. 1288.

But what of the lack of notice to the true owner of which the majority speaks? Aside from the fact that this reason for holding that a quitclaim deed does not qualify was rejected in Benskin v. Barksdale, there is sound reason for saying that a quitclaim deed gives ample notice. In Kilpatrick v. Sisneros, 23 Tex. 113, 136, this Court declared that "The object of the statute, in prescribing registry of the deed, as necessary to enable the possessor to avail himself of the five years' limitation, is, to give notice to the owner that the defendant in possession is claiming under the deed." It is the possession, use and enjoyment of the premises by an apparent stranger, not the record of a deed, which alerts the true owner to the need for action lest he lose his title to the land. He knows that under the statute he can lose his title in five years if the one in possession is paying the taxes on the land and is claiming right of possession under a deed. When he investigates the records, he finds that the one in possession is paying the taxes as they become due and has registered a deed, albeit a quitclaim deed. While the exact nature and extent of the interest claimed by the possessor is not evident from the deed, as a prudent landowner he should know that the deed would not have been registered by one claiming no title, 9 Baylor Law Review 344, and that the possessor may be claiming the greatest interest which he can acquire under the statute—the entire fee title. If an inquiry of the possessor as to the nature and extent of the interest claimed fails to yield a satisfactory answer, simple diligence should dictate the filing of suit to interrupt the running of the statute.

Under the holding of the majority in this case, one in possession of land who is regularly paying the taxes thereon and is claiming under a quitclaim deed enjoys no more favorable position under the laws of limitation than a naked trespasser who pays no taxes and has registered no instrument of conveyance. I do not believe this was the intent of those laws.

I would affirm the judgments of the courts below.

GRIFFIN and WALKER, JJ., join in this dissent.

---

3. The conclusion is approved by Professor Lennart v. Larson in 18 Southwestern Law Journal 385, 395.