**MEMORIAL PARK MEDICAL CENTER, INC., Appellant,**

v.

**RIVER BEND DEVELOPMENT GROUP, L.P. and TIBRO, Inc., Appellees.**

No. 11–07–00196–CV.

Court of Appeals of Texas, Eastland.

June 26, 2008.

Rehearing Overruled Aug. 14, 2008.

Christopher K. Stobaugh, J. Michael Tibbals, Snell Wylie & Tibbals, Dallas, TX, for Appellant.

E. Ray West, III, Massey, Shaw & West, Brownwood, TX, Charles E. McDonald, Bangs, TX, for Appellees.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

River Bend Development Group, L.P. brought this trespass to try title case against Memorial Park Medical Center, Inc. to remove a cloud on River Bend's title to twenty-two acres. River Bend traces its title to Lawrence Pruett, who sold the land to George Day. Day failed to pay school taxes on the land and failed to pay Pruett. After the tax judgment was entered against Day's company but before the actual tax sale, the Pruetts foreclosed on their deed of trust from Day. When the sheriff sold the land at the tax sale to Bill Williams, the land was owned by the Pruetts, who had not been parties to the tax suit. Memorial Park claims ownership to the same land based on the sale to Bill Williams. Because Williams obtained his money back on the ground that the tax sale was void, we affirm the summary judgment in favor of River Bend.[1]

### Background Facts

In April 1978, Lawrence Pruett and his wife sold twenty-two acres to George Day, taking a promissory note and deed of trust from Day. Day transferred the land to G.D.W., Inc. In February 1989, Brownwood Independent School District (BISD) filed suit in Cause No. T–1710 for taxes against G.D.W., Inc. Judgment for BISD was entered on June 22, 1989. The Pruetts, who held a recorded deed of trust lien, were not made parties to the BISD

suit nor were they served with citation. On September 5, 1989, the trustee foreclosed the deed of trust and conveyed the property to Lawrence Pruett by a deed that was recorded on December 14, 1989.

Bill Williams purchased the property at the tax sale. The sheriff's deed was dated January 15, 1990, and was recorded January 25, 1990. On March 3, 1992, Williams filed an application in Cause No. T–1710 to withdraw the funds that were in the registry of the court on the ground that the sheriff's deed was void. Williams's application stated that the sheriff's deed was void because the Pruetts had not been made parties to the BISD suit. In its order dated April 14, 1992, the court that had ordered the tax sale granted Williams the relief he requested. The order incorporated a letter from the attorney for BISD. The letter stated that BISD had no objection to Williams's claim for the excess proceeds and recommended that the order reflect that Williams had a right of subrogation as to the taxes and costs he had paid on the Pruetts' behalf. The taxes had amounted to $31.29. Because the twenty-two acres were just one of a number of properties listed in the judgment granted to BISD against G.D.W., Inc., it is impossible to tell from the record how much the costs were; however, the record indicates that they were minimal.

Williams had paid $730 for the property at the sheriff's sale, and he received $916.46 from the registry of the court under the order. Consistent with the relief granted to him, Williams did not pay any taxes on the property after 1991. However, in 2004, Williams gave a quitclaim deed to the property to William W. Ruth, presi-

---

1. The property in contention is legally described as 21.978 acres of land out of the W.H. Irion Survey No. 52, Abstract No. 537 in Brown County, and being all that certain twenty-two acre tract described in Volume 1046, Page 601 of the Deed Records of Brown County, Texas.

dent of Memorial Park; and Ruth then deeded the land to Memorial Park.

Tracing its title to the Pruetts, River Bend brought this trespass to try title cause of action. River Bend moved for summary judgment based on its title and on the ground that Williams had in effect been granted rescission of the tax deed to him because the deed was void. The trial court implicitly held that the sheriff's deed had been found void by the 1992 order, declared the deed void, and granted River Bend's motion for summary judgment.

### Issues on Appeal

In the first four issues, Memorial Park claims that the trial court erred in granting summary judgment to River Bend because River Bend failed to establish as a matter of law that Williams repudiated his interest in the property, that Lawrence Pruett did not receive notice of the tax sale, that River Bend's challenge of the sheriff's deed to Williams was not time-barred under TEX. TAX CODE ANN. § 34.08 (Vernon 2008) and former TEX. TAX CODE § 33.54 (1979), and that River Bend had satisfied the required conditions precedent to bringing its action under Section 34.08(a) before challenging the tax sale to Williams. In the fifth issue, Memorial Park contends that it has a superior claim through adverse possession. In the sixth issue, Memorial Park claims that the trial court erred in striking its claims against TIBRO, Inc., a predecessor in title to River Bend. In the seventh and eighth issues, Memorial Park claims that the trial court erred in its evidentiary rulings.

### Standard of Review

The standards of review for traditional summary judgment proceedings are well established and well defined. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

### Williams's Application to Withdraw Funds

Memorial Park has attempted to characterize River Bend's trespass to try title suit as an attack on the earlier tax judgment and sale to Williams. Based on that characterization of River Bend's suit, Memorial Park argues that River Bend failed to satisfy the conditions precedent to bringing its action under Section 34.08 of the Texas Tax Code and that River Bend's action is barred by the limitations provisions of Section 34.08 and former Section 33.54.

■ We disagree with Memorial Park's characterization of River Bend's trespass to try title action. It was not an attack on the tax judgment and sale to Williams. Because River Bend was not challenging the validity of the tax sale to Williams, River Bend was not required to comply with the requirements of Section 34.08 before commencing its trespass to try title action.[2] River Bend's trespass to try title action was based on its own title, but River Bend had to explain why Williams had no title or color of title after the order in 1992 to show that Memorial Park could not base its title on the tax sale.

Williams in effect asked for rescission of the sheriff's deed to him on the ground

**2.** Section 34.08(a) provides that a person may not commence an action that challenges the validity of a tax sale unless that person first (1) deposits into the registry of the court an amount equal to the amount of the delinquent taxes, penalties, and interest specified in the judgment of foreclosure plus all costs of the tax sale or (2) files an affidavit of inability to pay under TEX.R. CIV. P. 145.

that the tax sale was void. Williams could not have been more explicit in his application to withdraw funds filed in Cause No. T–1710:

By sheriff's deed dated January 15, 1990, a copy of which is incorporated herein as Exhibit "A", a 22.00 acre tract of land was purportedly sold in satisfaction of unpaid taxes due and owing in this Cause.

By Substitute Trustee's deed dated September 5, 1989, of record in Volume 1043, Page 534, Real Property Records of Brown County, Texas, title to the aforementioned property passed to Lawrence L. Pruett, the said Lawrence L. Pruett having been a first lien holder [sic] by virtue of a Deed of Trust dated April 14, 1978, executed by G.A. Day in favor of Lawrence L. Pruett and wife, Lucile B. Pruett, said Deed of Trust being of record in Volume 198, Page 254 of the Deed of Trust Records of Brown County, Texas.

That the said Lawrence L. Pruett and wife, Lucile B. Pruett, were not made parties to this Cause, in the manner required by law so that this Cause would be binding upon them.

That January 15, 1990, at the time of the tax sale, Lawrence L. Pruett was the record owner of the property, and as such the tax sale could only have passed title to the interest of the Defendant in the lawsuit, G.D.W., Inc., which at said time the said G.D.W., Inc., had no interest in the property because of the earlier foreclosure under the terms of the Deed of Trust.

The said BILL WILLIAMS bid for the property at the Sheriff's Sale conducted on December 5, 1989, the sum of $730.00, and of this amount, all delinquent taxes owing against said property were paid, with the balance being held in the Registry of the Court. At this time, there is in the Registry of the Court the sum of $903.31, which includes interest accrued thereon.

The said BILL WILLIAMS bid for the property at the tax sale in good faith, and in reality acquired nothing, and is entitled at law and in equity to a return of the monies held in the Registry of the Court.

WHEREFORE, PREMISES CONSIDERED, the said BILL WILLIAMS prays that all of the funds held in the Registry of the Court be returned to him.

 Williams was correct that the sheriff's deed was void for the reason given. *State Mortgage Corp. v. Traylor,* 120 Tex. 148, 36 S.W.2d 440, 443 (1931). The supreme court viewed such a deed as void in *Anderson v. Collum,* 514 S.W.2d 230 (Tex.1974). *See Ditmore Land & Cattle Co. v. Hicks,* 155 Tex. 596, 290 S.W.2d 499 (1956); and *Mumme v. McCloskey,* 28 Tex. Civ.App. 83, 66 S.W. 853 (1902, writ ref'd). Because the foreclosure judgment and the sheriff's deed did not appear void on their face, it is more accurate to say that the sheriff's deed was voidable. *Davis v. Howe,* 213 S.W. 609 (Tex.Com.App. 1919, judgm't adopted). Whether the tax deed was void or voidable, a lienholder must be joined in a delinquent tax suit in order to be bound by it. *Murphee Prop. Holdings, Ltd. v. Sunbelt Savs. Ass'n of Tex.,* 817 S.W.2d 850 (Tex.App.–Houston [1st Dist.] 1991, no writ). Moreover, the Tax Code provided that the sheriff's deed conveyed only G.D.W., Inc.'s interest in the twenty-two acres; at that time, the Pruetts were the record owners, and G.D.W., Inc. had no interest. At that time, former Section 34.01(d) (now Section 34.01(n))[3] provided

**3.** Former TEX. TAX CODE § 34.01(d) (1989). The current TEX. TAX CODE ANN. § 34.01(n)

(Vernon 2008) has the same provision.

that a sheriff's deed conveyed only "the interest owned by the defendant" in the tax suit. Williams correctly recognized in his application that the tax sale could only pass the interest of G.D.W., Inc. and that G.D.W., Inc. did not have an interest in the property at the time of the sheriff's deed.

The next question is whether the district court erred in giving Williams his money back. Memorial Park has argued that the district court's order was a judicial error. We disagree.

In 1992, a purchaser at a void or defective tax sale had two options to get his money back. The purchaser could seek the funds (in excess of taxes paid) under former TEX. TAX CODE § 34.04 (1983) or the purchaser could file a separate suit against the taxing authority under former TEX. TAX CODE § 34.07 (1979). Former Section 34.07 was titled "Subrogation of Purchaser at Void Sale" and provided in part:

> (a) The purchaser at a void or defective tax sale is subrogated to the rights of the taxing unit in whose behalf the property was sold to the same extent a purchaser at a void or defective sale conducted in behalf of a judgment creditor is subrogated to the rights of the judgment creditor.
>
> (b) Except as provided by Subsection (c) of this section, the purchaser at a void or defective tax sale is subrogated to the tax lien of the taxing unit in whose behalf the property was sold to the same extent a purchaser at a void or defective mortgage or other lien foreclosure sale is subrogated to the lien of the lienholder, and the purchaser is entitled to a reforeclosure of the lien to which he is subrogated.

> (d) In lieu of pursuing the rights to which he is subrogated, a purchaser at a void tax sale may elect to file an action against the taxing units to which the proceeds of the sale were distributed to recover the amount paid at the sale. A purchaser who files a suit authorized by this subsection waives all rights to which he would otherwise be subrogated.

In view of the modest amount of taxes that were due on the twenty-two acres, it is not surprising that Williams chose not to file a separate action against BISD and, instead, filed his application to recover proceeds under former Section 34.04 that provided:

> (a) A person may file a petition in the court that ordered the sale setting forth a claim to the excess proceeds within seven years from the date of the sale of the property.[4]

Williams filed his claim within three years of the purported sale to him. But for former Section 34.04, the district court in Cause No. T–1710 would have lost jurisdiction by then. The attorney for BISD, in agreeing to Williams's application, stated that Williams was subrogated to BISD's right to the taxes and costs Williams had paid and thereby recognized that Williams could bring an action against the Pruetts to recover those amounts. The district court agreed and incorporated BISD's attorney's letter as part of its order.

Memorial Park argues that the 1992 order did not set aside the sheriff's deed as void. Although the order did not expressly state that the deed was void, the only basis for Williams receiving his money back was an implicit finding by the district court that the sheriff's deed to Williams

---

4. The current Section 34.04 requires that a tax sale purchaser has to first have the tax sale declared void in an action against the taxing units under the current Section 34.07(d) before the purchaser can file a petition under Section 34.04. And the petition under Section 34.04 must be filed before the second anniversary of the date of the sale of the property. Section 34.04(a), (c)(1).

was void. As River Bend has pointed out, a purchaser at a valid tax sale had no statutory basis to recover excess proceeds; that appears to still be true. The right to recover excess proceeds arises only by statute. *See* Op. Tex. Att'y Gen. No. V–902 (1949). In 1992, only a purchaser at a void or defective tax sale had a statutory basis for recovering proceeds; again, that is still true today. Former Section 34.07(d) gave Williams the right to get his money back.

■ Memorial Park has attempted to create a fact question to defeat River Bend's motion for summary judgment by providing an affidavit from Williams that he did not repudiate the sheriff's deed. Williams's affidavit presents merely a "sham" fact issue. *See Pando v. Sw. Convenience Stores, L.L.C.*, 242 S.W.3d 76, 79 (Tex.App.–Eastland 2007, no pet.). Williams may not contradict his statements in his application to recover proceeds. The district court granted him the relief that he requested on the ground that the sheriff's deed was void.

Memorial Park's reliance on *John K. Harrison Holdings, L.L.C. v. Strauss*, 221 S.W.3d 785 (Tex.App.–Beaumont 2007, pet. denied), is misplaced because *Harrison Holdings* involved a challenge by Harrison to the tax foreclosure sale. River Bend has not challenged the tax sale to Williams; it is relying on the subsequent order. Harrison was in the position of River Bend in this case. However, in *Harrison Holdings*, the purchaser at the tax sale who sold it to Strauss had not taken any action to have the tax sale deed declared void to obtain his money back. Harrison argued that the tax judgment and sale to Strauss's predecessor (the tax sale purchaser) was void because "known and/or record owners of the property at the time were not made parties to the tax

suit or notified of the sale." 221 S.W.3d at 787. Harrison asked the court to hold that the limitations provisions relating to tax sales were either unconstitutional or did not apply to a void tax deed. The *Harrison Holdings* court held that the limitations defense under Sections 34.08(b) and 33.54 of the Texas Tax Code was constitutional and that Strauss could rely on that defense despite the failure to join record owners in the tax suit. At the time the suit in *Harrison Holdings* was commenced, Section 33.54[5] provided that an action relating to the title to property could not be maintained against the purchaser of the property at a tax sale unless the action was commenced before the first anniversary of the date that the deed executed to the purchaser at the tax sale was filed of record. In contrast, when Williams commenced his claim to recover the funds in 1992, former Section 33.54 allowed three years to bring an action to set aside the deed to Williams as void. Because Williams in effect had the deed declared void shortly after two years, the Pruetts were not required to duplicate his effort before the three-year period ended. After the 1992 order, Williams had no color of title or interest in the property; therefore, former Section 33.54 has no application to this case.

*Jordan v. Bustamante*, 158 S.W.3d 29 (Tex.App.–Houston [14th Dist.] 2005, pet. denied), and *Loper v. Meshaw Lumber Co.*, 104 S.W.2d 597 (Tex.Civ.App.–Eastland 1937, writ dism'd), are also inapposite. In *Jordan*, the taxing authority sued the Jordans for taxes and obtained foreclosure judgments on two parcels of land. Bustamante relied on the tax sales for his title. The Jordans argued that the tax sales were void because two lienholders, the State and the IRS, were not joined in the foreclosure suit. The court held (1) that

---

5. TEX. TAX CODE ANN. § 33.54 (Vernon 2008).

the Jordans had no standing to complain about the failure to join the State and the IRS because that did not affect them and (2) that the foreclosure judgment was valid as to them because the Jordans were parties to the tax suit. Standing is not an issue in this case because River Bend is not trying to set aside the original tax judgment against G.D.W., Inc. and the subsequent sheriff's deed. Williams accomplished the nullification of the sheriff's deed by his application to recover funds in Cause No. T–1710 and the court's order dated April 14, 1992.

In *Loper v. Meshaw Lumber Co.*, Loper challenged the earlier tax sale judgment, contending that the judgment in the tax sale was void. Rejecting his claim, the court held that he could not collaterally attack the judgment because the judgment "recite[d] due and legal service." *Loper*, 104 S.W.2d at 599. Even though a Mrs. Irene Howard was not made a party to the tax suit, the court held that the judgment foreclosing the tax lien was good against the parties joined in the suit and that "parties not joined [were] not bound by any such judgment." *Id.* at 599–600. Again, it was not the tax sale purchaser in *Loper* who complained about the tax sale as Williams did in the present case.

Because Williams obtained the relief he sought by the order, River Bend did not have to challenge the tax sale. Thus, River Bend was not required to satisfy the conditions precedent to filing a challenge found in Section 34.08(a). River Bend also was not required to show that the Pruetts did not receive notice of the tax sale. The limitations provisions of Section 34.08 and former Section 33.54 were not applicable under the unique facts of this case. Memorial Park's first four issues are overruled.

*Memorial Park's Claim of Adverse Possession*

In its fifth issue, as an alternative claim, Memorial Park asserts that it established that it has a superior claim to the property through adverse possession under TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.024–.026 (Vernon 2002). Memorial Park also argues that it at least demonstrated with uncontroverted summary judgment evidence that a fact issue exists regarding its claim to the property by adverse possession.

■ The three-year statute of limitations required Memorial Park to prove that it or its predecessors held the property "in peaceable and adverse possession under title or color of title" for the three years. Section 16.024; *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80–81 (Tex. 1989). The order voided the sheriff's deed to Williams; therefore, no title passed to him. And where a sheriff's tax deed has been shown to be void, that void deed cannot be considered "color of title." *Telfener v. Dillard*, 70 Tex. 139, 7 S.W. 847, 852 (1888); *Reynolds v. Farmers & Merchants Nat'l Bank of Nocona*, 135 S.W.2d 556, 557 (Tex.Civ.App.–Fort Worth 1939, no writ); *see also Watts v. Bruce*, 31 Tex. Civ.App. 347, 72 S.W. 258 (1903, writ ref'd) (between the date of the judgments against him and the levy and sale by the sheriff, the husband deeded the land to his wife; therefore, the sheriff's deed passed no title and was not "color of title" for the three-year statute). Memorial Park has not shown that it or its predecessors held the property by adverse possession under color of title.

Section 16.025, the five-year statute of limitations, requires that the person relying on the statute claim the property under a duly registered deed. The object of the requirement of a duly registered deed is "to define the boundaries of the claim

and give notice to the true owner of such adverse claim." *Davis,* 213 S.W. at 610. The purchaser at the tax sale in *Davis* was a deputy sheriff who bought the land on behalf of F.J. Brown; the deputy sheriff subsequently conveyed the land to Brown by quitclaim deed. Although a statute declared that the sale to the deputy sheriff was void, the supreme court held that the sale was "voidable." *Id.* at 610. Based on the statute, the holders of record title could have voided the tax sale unless their right was barred by the five-year statute of limitations. The supreme court held that it was immaterial that the deed conveyed no title because the deed gave notice to the true owner of an adverse claim to the land. It should be noted, however, that in *Davis,* the sheriff's deed purported to convey the interest of the true owner; thus, the court reasoned that it gave notice even though the statute prohibited sales to officers conducting the tax sale. *See Porter v. Wilson,* 389 S.W.2d 650 (Tex.1965).

■ Normally, a quitclaim deed will not constitute a duly registered deed under Section 16.025. *Johnson v. McClintock,* 202 S.W.3d 821, 823 (Tex.App.–Corpus Christi 2006, no pet.) (relying on *Porter,* 389 S.W.2d at 654, and *Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763, 769 (Tex.1994)). However, the supreme court in *Porter* recognized an exception where a sheriff's deed in a tax sale purports to convey the interest of the true owner of the property; in that situation, the sheriff's deed qualifies as notice to the true owner under the five-year statute. In this case, the *Porter* exception does not apply. The sheriff's deed to Williams could not have served as a duly registered deed under Section 16.025 because the deed purported to pass the interest of G.D.W., Inc., not the Pruetts' interest. Because Williams obtained the order, the sheriff's deed to him was rendered a nullity, and it is even more evident that the sheriff's deed could not serve as notice to

the Pruetts that Williams was making an adverse claim. In his application, Williams gave notice that he recognized the Pruetts' title.

■ Another requirement of Section 16.025 is that the person claiming adverse possession has paid the "applicable taxes on the property." Section 16.025(a)(2). This has been interpreted to mean that taxes were paid continuously on the property for five years. *Pierce v. Gillespie,* 761 S.W.2d 390 (Tex.App.–Corpus Christi 1988, no pet.). Or, as one court put it, the person claiming adverse possession under the five-year statute had to "make the consecutive payment of taxes required." *Schoellkopf Co. v. Starr,* 88 S.W.2d 564, 566 (Tex.Civ.App.–Galveston 1935), *aff'd,* 131 Tex. 263, 113 S.W.2d 1227 (1938). A partial payment of the taxes under this statute will not meet the requirement. *Wichita Valley Ry. Co. v. Somerville,* 179 S.W. 671 (Tex.Civ.App.–Amarillo 1915, no writ).

■ Memorial Park also relies on Section 16.026, the ten-year statute of limitations. Section 16.026(a) provides as follows: "A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." One essential element of adverse possession under the ten-year limitations statute is that the claimant's possession must be an actual and visible appropriation of the land for ten or more consecutive years. TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021, 16.026 (Vernon 2002); *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990).

Williams's acknowledgment of the Pruetts' title in his application requires us to examine Memorial Park's summary judgment evidence to determine if later Williams provided actual or constructive

notice to the Pruetts that he had decided to assert a hostile claim to their property. *See Butler v. Hanson,* 455 S.W.2d 942, 946 (Tex.1970) (possession was not adverse when claimant signed an affidavit disclaiming an interest in the record owner's land). We note that Williams paid no taxes on the property after the order gave him his money back. Memorial Park was required to provide facts to show that it or its predecessors' use of the property constituted an actual and visible appropriation of the property during the entire ten-year period. *See Terrill v. Tuckness,* 985 S.W.2d 97, 109 (Tex.App.–San Antonio 1998, no pet.); *Parker v. McGinnes,* 842 S.W.2d 357, 360 (Tex.App.–Houston [1st Dist.] 1992, pet. denied). Memorial Park's evidence consisted of affidavits of Ruth, Williams, and Hilton Wise.

Wise only states in his affidavit that in the early to mid–1990s, on more than one occasion, Williams or his relatives told Wise that Williams had bought the twenty-two acres and that Williams did not want Wise grazing his cattle on that property because Williams was using the property to grow hay. Ruth states in his affidavit that he contacted Lawrence Pruett who said that he thought he had lost the property due to the sheriff's sale and "that he was very angry with George Day for having never paid him on the 1978 Property Sale." [6] The problem, however, is the lack of factual evidence of Williams's, Ruth's, or Memorial Park's actual and visible appropriation of the land for ten or more consecutive years. Ruth states in his affidavit:

At all times from September 15, 2004[,] since purchasing the property to December 6, 2004[,] when I sold the Property to [Memorial Park], I used, enjoyed and exercised dominion and control over the property, and held myself out to third parties as the exclusive owner of the Property. My possession

of the property during that time period was actual, visible, continuous, notorious, distinct, hostile, and of such a character as to indicate unmistakable an assertion of a claim of exclusive ownership.

Ruth then makes a similar statement on behalf of Memorial Park.

Williams's statement in his affidavit was similar to those made by Ruth:

At all times from December 5, 1989, when I first purchased the Property, until September 15, 2004, when I sold and conveyed the Property to William W. Ruth, I used, enjoyed and exercised dominion and control over the property, and held myself out to third parties as the exclusive owner of the Property, and would not have sold the Property to William Ruth had I not believed that I had rightful ownership of the Property. My possession of the property during that time period was actual, visible, continuous, notorious, distinct, hostile, and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership. More than once during that period of time, I told people who I thought were trespassing or who otherwise had no interest in or right to be on the Property to keep off the Property, including, any livestock owned by member(s) of the Wise family who had taken a lease on the an [sic] adjacent piece of property.

■ These affidavits do not set forth statements of fact to support the legal conclusions asserted. To be competent summary judgment evidence, an affidavit must be based on personal knowledge, set forth facts admissible in evidence, and affirmatively show the affiant's competency to testify as to the matters stated therein. Tex.R. Civ. P. 166a(f). Unsupported conclusory statements are not credible and

6. In its brief, Memorial Park states that Lawrence Pruett is deceased.

are not susceptible to being readily controverted and, as a result, are not proper summary judgment evidence. *Warren v. Warren Equip. Co.*, 189 S.W.3d 324, 332–33 (Tex.App.–Eastland 2006, no pet.); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.–Houston [1st Dist.] 1997, no writ). Memorial Park did not provide summary judgment evidence that raised a fact issue on each element of its affirmative defense of limitations. Memorial Park's fifth issue is overruled.

### The Claims Against TIBRO

Memorial Park asserted third-party claims against George A. Day, TIBRO, and other third-party defendants. Day was the person who originally purchased the property from Lawrence Pruett and his wife in 1978; the other third-party defendants were entities allegedly owned or created by Day that appear in the deed records as having claimed an interest in the property at various points in time, culminating in a warranty deed dated March 25, 2003, to TIBRO. There is also a warranty deed dated February 8, 2005, from James and Lawrence Pruett to TIBRO. TIBRO then executed a warranty deed on May 13, 2005, to River Bend. As stated earlier, the trustee's deed to Lawrence Pruett was recorded on December 14, 1989.

Memorial Park claimed that the interests of Day and the Day entities in the property were "wrongful, illegal and fraudulent." TIBRO filed a motion to strike Memorial Park's third-party claims because Memorial Park failed to request and obtain leave from the court before joining the additional third-party defendants as required by Tex.R. Civ. P. 38(a). The trial court granted TIBRO's motion when it granted River Bend's motion for summary judgment. Memorial Park, in its sixth issue, asserts that the trial court erred in granting TIBRO's motion.

River Bend's cause of action and Memorial Park's counterclaim (and third-party petition) were trespass to try title actions. Therefore, the third-party defendants named in Memorial Park's third-party action were not proper parties because they were neither persons in possession of the property nor persons claiming title to the property. *Kennesaw Life & Accident Ins. Co. v. Goss*, 694 S.W.2d 115 (Tex.App.–Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see also* Tex.R. Civ. P. 784, 785. Memorial Park had to rely on its own chain of title; that chain of title failed primarily because of Williams's application and the 1992 order. Memorial Park's sixth issue is overruled.

### The Evidentiary Rulings

In its seventh and eighth issues, Memorial Park complains about the trial court's consideration of an affidavit by George Day because of his felony convictions. Day simply stated in his affidavit, dated February 1, 2007, that he leased the property to Wesley Wise on November 1, 1985, for ranching purposes; that the lease was in effect until November 1, 1991; that Wise continued to lease the property until his death in October 1999; that the twenty-two acres are surrounded on three sides by a larger eighty-seven-acre tract; and that there has never been a fence around the twenty-two-acre tract. Apparently TIBRO claimed that its title to the property was based on limitations as well as the warranty deed in 2005 from James Pruett and Lawrence Pruett.

Because River Bend's chain of title begins with Lawrence Pruett, and there is a warranty deed from him to TIBRO, and then a deed from TIBRO to River Bend, the Day affidavit can be ignored. We note, however, that a convicted felon may be a competent witness. *Parrish v. Brooks*, 856 S.W.2d 522, 528 (Tex.App.–

Texarkana 1993, writ denied). Day's felony conviction and subsequent disbarment would go to his credibility, not to the admissibility of the affidavit. The trial court did not err in overruling Memorial Park's motion to strike Day's affidavit. Memorial Park's seventh and eighth issues are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.