Opinion filed April 29, 2016



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00025-CV

_____

### SEAN ACREY AND SUSAN H. ACREY, Appellants

### V.

### LANGSTON LAND PARTNERS, LP; LANGSTON MINERAL PARTNERS, LP; CYNTHIA LANGSTON SCHMIEDICHE; AND CAROL LANGSTON MATHIS, Appellees

**On Appeal from the 236th District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 236-246292-10**

## M E M O R A N D U M   O P I N I O N

This is a suit between adjoining landowners over a small tract of land. Appellants, Sean and Susan H. Acrey, filed suit against Langston Land Partners, LP; Langston Mineral Partners, LP; Cynthia Langston Schmiediche; and Carol Langston Mathis (collectively referred to as the Langstons) asserting a claim for trespass to try title, a suit to quiet title, and a request for declaratory relief. The trial court granted

summary judgment in favor of the Langstons on all of the Acreys' claims for relief. However, the trial court denied the Langstons' request for attorney's fees. In two issues on appeal, the Acreys contend that the trial court erred when it granted summary judgment in favor of the Langstons on both their trespass to try title claim and their suit to quiet title claim. In one cross-point, the Langstons assert that the trial court erred when it denied their motion for attorney's fees. We affirm.

## *Background Facts*

This is a property dispute over approximately 4.62 acres of land located in Tarrant County (the subject property). The Acreys and the Langstons are adjacent landowners. The Acreys assert both record title to the subject property and title by adverse possession. Their claims are based on a long-standing fence. The Acreys claim ownership to the fence line while the Langstons assert that the fence is an interior fence located on their property. The Acreys alleged that the underlying suit arose as a result of their attempt to convey their property to a third party. They were unable to obtain a title policy commitment for the subject property because of a discrepancy concerning the ownership of the tract.

## *Analysis*

In their first issue, the Acreys challenge the trial court's entry of summary judgment on their trespass to try title claim. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The Langstons asserted both traditional and no-evidence grounds for summary judgment. *See* TEX. R. CIV. P. 166a(c), (i). Where, as here, the trial court did not specify the ground or grounds on which it relied when it granted summary judgment, we must affirm the summary judgment if any summary judgment ground advanced by the movant is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When a party

2

moves for summary judgment on both no-evidence and traditional grounds, the appellate court should address the no-evidence grounds first. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict; it requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). When reviewing a no-evidence summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus.*, 286 S.W.3d at 310; *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)).

In their no-evidence motion for summary judgment, the Langstons essentially attacked every element of the Acreys' claims. Rule 166a(i) does not limit the number of elements that a party may challenge in a no-evidence motion for summary judgment. *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 861 (Tex. App.—Dallas 2005, no pet.); *Cmty. Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 279–80 (Tex. App.—El Paso 2004, no pet.). Thus, a defendant may challenge every element of the plaintiff's claims, as long as each element is distinctly and explicitly challenged. *Cmty. Initiatives*, 153 S.W.3d at 280.

A trespass to try title action is a procedure by which claims to title or the right of possession may be adjudicated. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). The plaintiff in a trespass to try title action must recover, if at all, on the strength of its own title and not on the weakness of the defendant's title. *Id.*; *Adams v. Rowles*, 228 S.W.2d 849, 853 (Tex. 1950). The plaintiff has the burden to establish superior title by showing it has: (1) title emanating from the sovereignty of the soil; (2) a superior title in itself emanating from a common source to which the defendant claims; (3) title by adverse possession; or (4) title by earlier possession coupled with proof that possession has not been abandoned. *Martin*, 133 S.W.3d at 265; *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964). The Acreys premised their trespass to try title action concerning the subject property on two grounds. First, they asserted that they are the record title owners of the property. The Acreys also asserted title by adverse possession as an alternative ground.

In order to prevail on their claim of record title, the Acreys would have to show title emanating from the sovereignty or superior title emanating from a common source under which the Langstons claim title. *See Martin*, 133 S.W.3d at 265. The Acreys traced their record title to the subject property to a 1942 deed wherein R.W. and Mildred Sanford purported to convey 147.53 acres of land to Sam R. Hord. The property described in the deed was a metes and bounds description with the boundary of the property extending to a fence line. However, the property description in the 1941 deed from W.M. Andrews conveying the property to the Sanfords did not extend as far as the fence line. The subject property constitutes the difference between the metes and bounds description in the prior deed and the metes and bounds description in the Sanford deed. Thus, the Sanfords did not have record title to the subject property when they purported to convey it to Sam R. Hord in 1942.

The subject property was not contained in the property descriptions of any deed in the Acreys' chain of title prior to 1942. Furthermore, the 1942 deed from the Sanfords to the Hords is not in the Langstons' chain of title. Thus, the Acreys did not present any evidence of record title emanating from the sovereign or from a common source as required by the first two methods of establishing superior title in a trespass to try title action outlined in *Martin*. Accordingly, the trial court did not err in granting the Langstons' no-evidence motion for summary judgment on the Acreys' claim of record title.

The Acreys based their adverse possession claim on the five-, ten-, and twenty-five-year statutes of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.025–.26, 16.028 (West 2002). One seeking to establish title to land by adverse possession has the burden of pleading and proving every fact essential to that claim. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990); *Harlow v. Giles*, 132 S.W.3d 641, 647 (Tex. App.—Eastland 2004, pet. denied). Texas law requires that adverse possession be "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." CIV. PRAC. & REM. § 16.021(1). The possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership by the occupant. *Rhodes*, 802 S.W.2d at 645.

The Acreys' summary judgment evidence consisted of five affidavits and excerpts from the deposition of a long-time neighbor. Four of the affidavits were entitled "Affidavit of Possession of Land" and were executed approximately five years prior to the filing of the underlying suit. One of these affidavits was executed by Susan Acrey's father, W.D. "Bill" Hord Sr. Hord stated in the affidavit that he

5

was familiar with the use and occupancy of the property owned by the Acreys. He stated as follows regarding the fence that borders the subject property:

During the stated period of time good fences capable of turning livestock have been maintained on the Lands as follows:

Barb-Wire fences ranging from four to five strands and held by Steel T-Post placed along the Eastern border of the Acrey/Hord Tract and the Medlin/Langston Tract of Land has been in place and has not moved in over sixty-five (65) years.[1] The fence has been fixed and repaired on a regular and ongoing basis by both tract owners, both of which have never disputed the validity and location of the existing fence.

During the stated period of time the Lands have been put to the following uses:

The above described land has for over sixty-five years been used for a number of agricultural purposes including grazing, cultivation of crops, and breeding of livestock.

Hord also stated that the Acreys' "occupancy and claim of title has been open, visible, notorious, continuous, peaceable, exclusive, and adverse to all the world." The other three affidavits entitled "Affidavit of Possession of Land" contain the same basic information as contained in Hord's affidavit. The excerpts from the deposition of Calvin Peterson essentially tracked the information contained in the Affidavit of Possession of Land that he executed.

The Acreys also attached an affidavit executed by Susan Acrey as summary judgment evidence. She averred that she has been the title owner and actual possessor of the subject property since 1976. She stated that the fence has not moved since 1976 and that she has "continuously used the [subject property] in an open and obvious manner for agricultural purposes including the grazing and breeding of

---

[1]Hord's reference to sixty-five years in his 2005 affidavit would relate back to approximately 1940.

livestock and the cultivation of crops . . . to the exclusion of all others since 1976." She also stated that she has actually occupied the subject property and that "my occupancy and claim of title has been open, visible, notorious, continuous, peaceable, exclusive and adverse to all the world."

We noted in *Harlow* that the case law distinguishes "casual fences" from those that "designedly enclose" an area. *Harlow*, 132 S.W.3d at 647. "The law is well settled that the mere grazing of land incidentally enclosed by a fence created by others cannot support a claim of adverse possession." *Id.* (citing *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971); *West Prod. Co. v. Kahanek*, 121 S.W.2d 328, 331 (Tex. 1938); *Mohnke v. Greenwood*, 915 S.W.2d 585, 593 (Tex. App.—Houston [14th Dist.] 1996, no writ)).[2] "Where the fence existed prior to the claimant's possession of the land and the claimant fails to demonstrate the purpose for which the fence was erected, the fence is a 'casual fence.'" *Harlow*, 132 S.W.3d at 647 (citing *Rhodes*, 802 S.W.2d at 646). "Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed enclosure." *Id.* (citing *Rhodes*, 802 S.W.2d at 646). Thus, a casual fence cannot support an adverse possession claim. *Rhodes*, 802 S.W.2d at 646; *Orsborn v. Deep Rock Oil Corp.*, 267 S.W.2d 781, 785 (Tex. 1954).

The Acreys' summary judgment evidence establishes that the fence that borders the subject property was in existence at the time the Acreys acquired the property. There is no evidence of the original purpose of the fence, and there is no evidence of who originally constructed it. Thus, there is no evidence that the fence is anything other than a casual fence under *Rhodes*. *Rhodes*, 802 S.W.2d at 646.

---

[2]The opinion in *Mohnke* sets out the historical purpose of the distinction between casual fences and fences that "designedly enclose" an area. *Mohnke*, 915 S.W.2d at 593.

Furthermore, the summary judgment evidence establishes that the fence was maintained in or near its original condition by the property owners on both sides of the fence. As noted previously, repairing or maintaining a casual fence generally does not convert it into a designated enclosure. *Harlow*, 132 S.W.3d at 647 (citing *Rhodes*, 802 S.W.2d at 646). There is no evidence that the Acreys or their predecessors in interest made substantial modifications to the fence to make it a designated enclosure or that the Acreys made it their fence. *See Rhodes*, 802 S.W.2d at 646; *Butler v. Hanson*, 455 S.W.2d 942, 946 (Tex. 1970) (noting that the adverse possessor "made it his fence" by changing the character of the fence).

We additionally note that the affidavits that comprise the bulk of the Acreys' summary judgment evidence are conclusory. As such, they do not sufficiently raise fact issues to support their claim of adverse possession. The affidavits entitled "Affidavit of Possession of Land" state that the Acreys' "occupancy and claim of title has been open, visible, notorious, continuous, peaceable, exclusive, and adverse to all the world." These affidavits additionally alleged that the property has "been used for a number of agricultural purposes including grazing, cultivation of crops, and breeding of livestock." However, the affidavits do not contain any facts detailing the agricultural activities conducted on the subject property. In this regard, the affidavits addressed the Acreys' entire tract of over sixty acres. The only additional fact concerning the subject property contained in the deposition excerpt of Calvin Peterson was that a creek ran through the subject property and that livestock from the Acreys' property had access to the creek. As we noted previously, the grazing of land next to a causal fence will not support a claim of adverse possession. *McDonnold*, 465 S.W.2d at 142; *Orsborn*, 267 S.W.2d at 785.

The Acreys' remaining summary judgment evidence was Susan Acrey's affidavit executed after the underlying lawsuit was filed. She averred that the fence

8

had been "maintained" through the years—as opposed to being substantially modified into a designated enclosure. She stated that she had "continuously used the [subject property] in an open and obvious manner for agricultural purposes including the grazing and breeding of livestock and the cultivation of crops . . . to the exclusion of all others since 1976." However, she did not provide any factual details concerning the agricultural activities conducted on the subject property. Acrey also recited the legal elements of a claim of adverse possession by stating that "my occupancy and claim of title has been open, visible, notorious, continuous, peaceable, exclusive and adverse to all the world." However, she did not provide any additional facts detailing her claim of adverse possession.

We addressed similar conclusory summary judgment evidence in the context of a claim of adverse possession in *Memorial Park Medical Center, Inc. v. River Bend Development Group, L.P.*, 264 S.W.3d 810, 819 (Tex. App.—Eastland 2008, no pet.). The affidavits in *Memorial Park* provided as follows:

> At all times from September 15, 2004[,] since purchasing the property to December 6, 2004[,] when I sold the Property to [Memorial Park], I used, enjoyed and exercised dominion and control over the property, and held myself out to third parties as the exclusive owner of the Property. My possession of the property during that time period was actual, visible, continuous, notorious, distinct, hostile, and of such a character as to indicate unmistakable an assertion of a claim of exclusive ownership.

*Mem'l Park Med. Ctr.*, 264 S.W.3d at 819 (alterations in original). We concluded that these affidavits did not set forth sufficient statements of fact to support the legal conclusions asserted in the affidavits. *Id.* We held that unsupported conclusory statements are not proper summary judgment evidence raising a fact issue. *Id.* (citing TEX. R. CIV. P. 166a(f); *Warren v. Warren Equip. Co.*, 189 S.W.3d 324, 332–33 (Tex. App.—Eastland 2006, no pet.); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)); *see Ryland Grp., Inc. v. Hood*, 924

S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 661 (Tex. 1995). We conclude that the Acreys' summary judgment evidence does not set forth statements of fact to support their conclusory statements that they satisfied the legal elements of a claim of adverse possession.

We are aware of two recent cases from the Second Court of Appeals in Fort Worth in which that court reached a different result with respect to claims of adverse possession to land bordered by a fence. The fact that these cases are from the Second Court of Appeals is significant because this case was transferred to us from the Second Court of Appeals pursuant to an order of the Texas Supreme Court under the authority of Section 73.001 of the Texas Government Code. TEX. GOV'T CODE ANN. § 73.001 (West 2013). In accordance with Rule 41.3 of the Texas Rules of Appellate Procedure, we are required to follow the precedent of the Fort Worth Court of Appeals "unless it appears that the transferor court itself would not be bound by that precedent." TEX. R. APP. P. 41.3 cmt. to 2008 change.

In *Mead v. RLMC, Inc.*, 225 S.W.3d 710, 716 (Tex. App.—Fort Worth 2007, pet. denied), and *Perkins v. McGehee*, 133 S.W.3d 287, 292–93 (Tex. App.—Fort Worth 2004, no pet.), the court determined that proof of a designated enclosure was not required because the claimant established that the disputed property was constantly used for grazing, the disputed property was contiguous to the claimant's other property, the claimant made modifications to the fence to make it "his fence," and the general reputation in the community was that the disputed property belonged to the claimant. There are some facts in this case that are similar to facts in *Mead* and *Perkins*, specifically that the subject property is contiguous to the Acreys' property, and there is summary judgment evidence that neighboring landowners believed that the subject property belonged to the Acreys. However, there is no

10

evidence detailing the grazing of the subject property, and there is no evidence that the Acreys made substantial modifications to the fence. Because of these distinguishing facts and the conclusory nature of the Acreys' summary judgment evidence, we conclude that the Fort Worth Court of Appeals would not be bound by the precedent of *Mead* and *Perkins* if it were faced with deciding this case.

We conclude that the trial court did not err in granting the Langstons' no-evidence motion for summary judgment. Accordingly, we do not consider the trial court's ruling on the Langstons' traditional motion for summary judgment. *See* TEX. R. APP. P. 47.1. We overrule the Acreys' first issue.

The Acreys assert in their second issue that the trial court erred in granting the Langstons' no-evidence motion for summary judgment on the Acreys' suit to quiet title. A suit to quiet title is different from a trespass to try title suit. *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). A trespass to try title action is statutory and accords a legal remedy, while a suit to quiet title accords an equitable remedy. *Id.* A suit to quiet title relies on the invalidity of the defendant's claim to the property. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 387–88 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied). It exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Essex Crane*, 371 S.W.3d at 388 (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App—Waco 1980, writ ref'd n.r.e.); *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *Essex Crane*, 371 S.W.3d at 387–88; *Hahn*, 321 S.W.3d at 531. The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim

is a cloud on the title that equity will remove. *Essex Crane*, 371 S.W.3d at 387–88; *Hahn*, 321 S.W.3d at 531.

The Acreys premise their suit to quiet title on their claims of record title and adverse possession to the subject property. We have determined that the trial court did not err in granting the Langstons' no-evidence motion for summary judgment on each of these claims of title. Accordingly, our ruling on the Acreys' first issue is dispositive of their suit to quiet title. We overrule the Acreys' second issue.

Next, we address the Langstons' cross-point on appeal. *See* TEX. R. APP. P. 38.2(b). The Langstons contend that the trial court erred when it denied their motion for attorney's fees. Generally, a party may not recover attorney's fees unless authorized by statute or contract. *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009)). The Texas Uniform Declaratory Judgment Act authorizes a trial court to award "reasonable and necessary attorney's fees as are equitable and just." CIV. PRAC. & REM. § 37.009 (West 2015). When a statute states that a trial court "may" award attorney's fees, such an award is reviewable for an abuse of discretion. *Smith v. McCarthy*, 195 S.W.3d 301, 304 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

As noted previously, the Declaratory Judgment Act authorizes a recovery of attorney's fees. However, a trial court does not have the authority to award attorney's fees in trespass to try title suits. *See Biltex Enters., Inc. v. Myers*, No. 02-13-00465-CV, 2015 WL 1967285, at \*3 (Tex. App.—Fort Worth Apr. 30, 2015, no pet.) (mem. op.); *EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 304 (Tex. App.—San Antonio 2007, pet. denied). Furthermore, a party cannot recover attorney's fees under the Declaratory Judgment Act when the only issues, aside from attorney's fees, concern clearing of title or trespass to try title. *AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 588 (Tex. App.—Dallas 2008, no pet.); *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). "Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form." *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied). Because a claim for declaratory relief is "merely incidental to the title issues," the Declaratory Judgment Act will not supplant a suit to quiet title by allowing attorney's fees under such circumstances. *Id.* (quoting *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002)); *Sw. Guar. Trust*, 981 S.W.2d at 957.

The Langstons rely on *Lile v. Smith* for the contention that they can recover attorney's fees under the Declaratory Judgment Act. *Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.). In *Lile*, the court noted that in 2007 the legislature added subsection (c) to Section 37.004 of the Texas Civil Practice and Remedies Code, specifically permitting a boundary dispute to be litigated as a declaratory judgment action. CIV. PRAC. & REM. § 37.004(c). Thus, attorney's fees are recoverable in boundary disputes, but not in trespass to try title actions. *Lile*, 291 S.W.3d at 78. *Lile* held that "[o]ne must look to determine if the heart of the

13

controversy is to determine a boundary or whether its true aim is to determine the title to land." The court then cited the following "but for" test set out in *Plumb v. Stuessy*: "If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it might involve questions of title." *Id.* (quoting *Plumb v. Stuessy*, 617 S.W.2d 667, 669 (Tex. 1981)).

The Langstons assert that, under the application of the *Lile* test, Section 37.004(c) applies. We do not agree with the Langstons' argument. As was the case in *Lile*, there is no indication that the controversy in this case arose in a dispute over the location of a boundary. *Id.* The record shows that the controversy in the case before us is "not over the boundary between" land owned by the Acreys and land owned by the Langstons, but rather involves rival claims to ownership of the subject property. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 389–90 (Tex. 2011) (indicating that the question was not where the boundary was between State-owned land and Trust-owned land, but whether the State owned any land at all); *see also Kehoe v. Clouse*, No. 04-14-00151-CV, 2015 WL 1393535, at *2 (Tex. App.—San Antonio Mar. 25, 2015, pet. denied) (mem. op.). Here, the underlying lawsuit involved rival claims to the 4.62 acres of land; accordingly, we conclude the underlying lawsuit is a suit to determine title. *See Sawyer Trust*, 354 S.W.3d at 389–90; *Kehoe*, 2015 WL 1393535, at *2. Thus, the Langstons were not entitled to recover attorney's fees. *See Biltex Enters.*, 2015 WL 1967285, at *3; *Kehoe*, 2015 WL 1393535, at *6.

Moreover, even if attorney's fees were recoverable under Section 37.004(c), the trial court's decision to award or deny attorney's fees would be subject to the court's sound discretion. The record in this case does not demonstrate that the trial court abused its discretion in denying the Langstons' motion for attorney's fees when one considers that the bulk of the parties' efforts were directed to the Acreys' claim

14

of adverse possession, a matter that is clearly a question of title rather than an issue concerning the location of a boundary. We overrule the Langstons' cross-point on appeal.

## *This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

April 29, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

15